ELLIS, Judge.
The Travelers. Insurance Company and The Travelers Indemnity Company filed this suit against F. M. Sanders and Audubon Insurance Company seeking to recover on a subrogation claim arising from a truck accident. Travelers Insurance Company’s claim consisted of $201.00 in Workmen's Compensation benefits paid to James Busby, a truck driver employed by W. M. Chambers Truck Line. The Travelers Indemnity Company seeks $7,808.54 which represents a subrogated claim for damages to a tank truck and trailer, and the cargo of this vehicle. This is the amount paid by this company to its insured for the repairs to the vehicle and the loss of cargo, after the $500.00 deductible provided in the policy was paid by the insured. The insured does not seek reimbursement of this deductible item.
After a trial on the merits, judgment was rendered in District Court in favor of the plaintiffs. This judgment was corrected so that Audubon Insurance Company would be cast for only its policy limits, i. e., $5000.00 in solido with F. M. Sanders. From this judgment both defendants have perfected a suspensive appeal.
In the main, the facts of this case are undisputed. It seems that the accident in question occurred at approximately 1:30 P.M, on the 20th day of June, 1958, about one quarter of a mile out of Raceland, Louisiana. A tank truck owned by plaintiff's insured was being driven by insured’s employee, and was loaded with distillate. The driver, James R. Busby, was driving the unit in a southerly direction on Louisiana Highway # 1 towards Raceland. Visibility was good .at a distance of from 700 to 800 feet, although the weather was inclement, and the highway was wet at the time. The truck had been driven around a gradual curve and into a straight-away which extended some 600 feet to the point of the accident.
Sometime during the time the truck was-being driven around the curve or into the straight-away Harvey Sanders, the fifteen, year old son of F. M. Sanders, made a “U” turn into its path. The truck driver-testified that the car was to the left of the-truck cab even after it completed the “U”‘ turn onto the highway. The car continued in the same direction as the truck, but the-truck driver was forced to drive to the shoulder. The truck had almost come to a complete stop and the cab was about even-with and parallel to the Sanders car when the shoulder gave way. This point was approximately 100 feet south of the Snow-King Cleaners where Sanders had been-parked facing north prior to turning into the highway.
A tachograph record was introduced into-evidence without objection and this record was explained at length by two experts. The tachograph was in the insured’s truck, at the time of the accident.
Apparently exact distances are difficult to calculate on this machine. However,, the experts testified, in effect, that the-tachograph indicated that within a distance of 1,200 to 1,600 feet of the point of the accident, Busby had reduced his speed' from the rate of 50 miles per hour at which he had been traveling. The speed' of the truck was reduced from 50 miles per hour to 39 or 40 miles per hour. The driver-then picked up his speed to 40 or 41 miles per hour and then reduced his speed suddenly until he had almost come to a stop-at the point of impact.
This proof supports the findings of the-trial judge and substantially corroborates- *864 the truck driver’s version of the accident. One questionable point in Busby’s testimony is that he states that Sanders pulled out on the highway attempting to negotiate a “U” turn but pulled back off the highway. Busby states he checked his speed at first, but then started to speed up when Sanders suddenly negotiated a “U” turn directly in the path of the oncoming truck, when Busby put on his brakes and pulled to the right on the shoulder. He brought his truck to a stop. It was then that the shoulder gave way causing the truck and trailer to overturn into a drainage ditch.
It is questionable whether or not Sanders came out on the highway first and then backed off before he negotiated his turn as testified to by Busby. This was not set forth in an earlier statement made by Busby which is in evidence. However, whether Sanders did or did not come out on the highway twice is not found to be of particular significance. It should be noted that the trial was had some four years after the accident. Therefore, it is felt that discrepancies in the details of an earlier statement and the testimony on the trial is not surprising.
The significant point is that Sanders did turn in the path of an oncoming truck which is bound to have been within the range of visibility and which was not exceeding the speed limit at the time it came into the straight-away. It is found that Sanders was clearly negligent in these actions.
There are only two main questions before this Court, (1) Was Busby contribu-torily negligent? (2) If not, did Busby have the last clear chance to avoid the accident ?
Counsel for defendants contends that Busby made an admission which convicted him of negligence. This was that Busby admitted that he probably could have brought his truck to a stop when he first saw the Sanders car in his path, if he had continued to reduce his speed instead of picking it up again. However, the gist of this testimony was that Busby speeded up again only after Sanders pulled back. Accepting this version of the facts as true for the sake of this argument, Busby was well within his right to speed up on the open highway when his path was cleared. The Sanders car, according to Busby, was backed almost completely off the highway.
An insurance investigator obtained a supplementary statement on July 11, 1958, from James Busby which is in evidence and which is relied upon by defendants. We quote the pertinent portions of this statement :
“At the time I was operating the tractor trailer unit of W. M. Chambers Truck Line when in the accident of June 30, 1958, in Raceland, Louisiana, the fifth wheel of my tractor was too far forward on the frame, which exceeds the load capacity on the front wheels and makes it almost impossible to handle correctly the tractor in an emergency. When the tank is loaded to capacity and when tractor trailer unit is being operated at high speed it is almost impossible to handle the unit correctly under an emergency. The weight of the tractor trailer unit I was operating at the time of this accident was over and above the State of Louisiana load limit. If I had not been loaded over capacity at the time of the accident it is very possible that the accident might not have happened. At the time of the accident, the chart in my cab indicating the speed of my unit was operating and I was exceeding the speed limit just before the accident. I was traveling at a speed of about 50 miles per hour in a 45 miles per hour speed zone.”
Busby explained' his statement concerning the fifth wheel. He testified that he believed the position of the fifth wheel *865 on the truck trailer was such that it made the vehicle difficult to maneuver in an emergency if the truck was fully loaded. Blalock, the safety engineer who testified, stated that this was not so. Similarly, Busby stated he believed the truck trailer was five or six hundred pounds overloaded. Blalock contradicted this impression also. He took the figure of 7,625 gallons, added the weight of this load to the weight of the truck and trailer unit and calculated that the unit was not overloaded. Regardless of whether the fifth wheel affected the maneuverability of the truck or the truck was overloaded, neither condition was a proximate cause of the accident, as it would have occurred with or without such conditions.
The fact that Busby was exceeding the speed limit by five miles per hour at a minimum distance of 1,200 feet from the point of the accident is not deemed significant. It is clear that the speed of the unit was well below the maximum limit from that point.
Counsel for defendants also relied upon a letter of dismissal written to Busby five days after the accident. In that letter, Blalock charged Busby with gross negligence in regard to the accident, mentioned previous accidents, and Busby’s continued habit of exceeding the speed limit despite a warning letter. The trial court correctly observed that the question of whether or not Busby was negligent for the purposes of this suit was his province. The trial judge was correct in this observation. The trial judge concluded that Busby was not contributorily negligent, nor did he have the last clear chance to avoid the accident. He found Sanders’ negligence to be the proximate cause of the accident.
For the above reasons the judgment of the lower court is affirmed, all costs, including the costs of this appeal, to be taxed to defendants, F. M. Sanders and Audubon Insurance Company.
Affirmed.